IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-140-CR


NO. 3-90-163-CR


NO. 3-90-164-CR





REX MOSES,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY 



NOS. 333-475, 313-362, 324-840, HONORABLE WILFORD FLOWERS, JUDGE 



 





 Appeals are taken from three convictions for criminal
trespass, Tex. Pen. Code Ann. § 30.05 (1989 & Supp. 1991),
occurring at clinics where abortions are performed in Austin. 
After the jury found appellant guilty in cause no. 3-90-140-CR, (1)
punishment was assessed by the court at 180 days' confinement and
a fine of $1,000.00. In the remaining two causes, trial was before
the court and punishment was assessed at 180 days' confinement.

 It is undisputed that appellant and others went to the
"Ladies Center" in December 1988 (cause no. 3-90-163-CR) and
"Reproductive Services" in May and July 1989 (cause nos. 3-90-140-CR and 3-90-164-CR) and blocked the entrance to these clinics with
the avowed purpose of slowing down or stopping abortions. We will
review the evidence only in instances where it is necessary to the
resolution of appellant's points of error.

 Appellant utilizes a single brief to assert fifteen
points of error in the three causes. Cause nos. 3-90-140-CR and 3-90-164-CR share common points of error. Appellant asserts the
court erred in: (1) finding that the defenses of necessity and
mistake of fact are not available to appellant; (2) excluding
medical testimony relative to the development of the fetus,
techniques utilized in performing abortions, their effect on the
unborn infant, exhibits reflecting development of the fetus,
appellant's testimony relative to abortion, and the relative value
of the unborn infant to property; and (3) granting the State's
motion to quash appellant's subpoenas. In cause no. 3-90-163-CR,
appellant contends that there is no evidence to support findings
that he trespassed on property owned by Karen LaFayette and that he
received notice to leave the premises by the owner or one acting
with the apparent authority of the owner. We reject appellant's
points of error and affirm the judgments of the trial court.

 At the outset we note the statement of the court in a
similar case, Reed v. State, 794 S.W.2d 806 (Tex. App. 1990, pet.
ref'd). Writing for the court, Justice Paul Pressler stated:



Before us are individuals charged with a crime. Most
persons so charged have been engaged in activity
motivated by selfish or base motives. Such is not the
case here. Before this court are individuals who have
been motivated by the highest principles. Their concern
is assisting other human beings and preserving what they
conscientiously believe to be human life. The question
before us, however, is not their motivation or the
correctness of their convictions. This court must
determine solely the question of whether these
individuals, however well intentioned, have actually
broken a law of the state of Texas in effect at the time
of the occurrence in question. No individual, whether he
be citizen, lawyer, or judge, is above the law. We must
abide by and follow the law as it is and not as we wish
it were.



794 S.W.2d at 807. 

 Except for points of error eight and ten, points one
through thirteen assert that the court erred in not charging the
jury on the defense of necessity, failing to recognize such defense
in the trial before the court, and excluding the doctor's and
appellant's testimony. Since the resolution of whether the defense
of necessity is available in these causes has a direct bearing on
whether the court erred in excluding the proffered testimony, we
analyze these points of error together.

 Appellant contends that the testimony of Dr. Dan Stuckey
describing the development of the fetus in the womb, its humanity,
the techniques of abortion, the suction curette procedure and its
effect on the fetus, an exhibit reflecting the development of the
fetus in the womb, and appellant's testimony of his belief in the
humanity of the fetus are relevant to the issue of necessity and
the court erred in excluding the evidence. Appellant developed the
foregoing evidence at a pretrial hearing. Appellant was allowed to
offer the doctor's testimony at trial without calling the witness.

 Under Tex. Pen. Code Ann. § 9.22 (1974), the defense of
necessity requires a showing that:



(1) the actor reasonably believes the conduct is
immediately necessary to avoid imminent harm;


(2) the desirability and urgency of avoiding the harm
clearly outweigh, according to ordinary standards
of reasonableness, the harm sought to be prevented
by the law prescribing [sic] the conduct; and


(3) a legislative purpose to exclude the justification
claimed for the conduct does not otherwise plainly
appear.



 Appellant recognizes that a number of opinions from the
Houston Courts of Appeal have held adversely to his position. (2) 
Since the filing of appellant's brief, Reed, 794 S.W.2d 806, and an
Amarillo Court of Appeals case, Brumley v. State, 804 S.W.2d 659
(Tex. App. 1991, no pet.), have also rejected appellant's
contentions.

 Appellant cites a number of cases for the proposition
that a defendant is entitled to an affirmative instruction on the
law as to every defensive issue raised by the evidence. See
Johnson v. State, 650 S.W.2d 414 (Tex. Cr. App. 1983); Armstrong v.
State, 653 S.W.2d 810 (Tex. Cr. App. 1983).

 In support of his position that he is entitled to the
affirmative defense of necessity in the instant cases, appellant
relies on Johnson and Schermbeck v. State, 690 S.W.2d 315 (Tex.
App. 1985, no pet.). Appellant contends that Johnson overrules Roy
v. State, 552 S.W.2d 827 (Tex. Cr. App. 1977). In Roy, the court
held that the belief that one is in a "high crime" area would not
raise the defense of necessity where the defendant is charged with
the offense of unlawfully carrying a handgun on premises licensed
for the sale of alcoholic beverages as prohibited by Tex. Pen. Code
Ann. § 46.02 (1989). 552 S.W.2d at 831. In Johnson, the court
stated:



We agree that to allow a defense of necessity whenever
anyone "felt he was in a `high crime' area," as claimed
by the defendant in Roy, would violate the intent of Sec.
46.02, supra. We do not agree, however, that such
reasoning demonstrates a legislative purpose to exclude
the defense of necessity under Sec. 9.22(3), supra. A
feeling that one is in a "high crime" area would not
constitute a reasonable belief that carrying a weapon in
violation of Sec. 46.02 is immediately necessary to avoid
imminent harm, Sec. 9.22(1), and therefore would not
raise the defense even if it is available.


An example of when the defense of necessity should be
available can easily be imagined. V.T.C.A., Penal Code
Secs. 9.33, 9.42 and 9.43 justify the use of deadly force
for the protection of property or a third person. If an
individual in his own home observed a situation that
required taking protective action under one of those
sections, but to take such action would require him to
take a weapon covered by Sec. 46.02 to another location,
such as his neighbor's yard, would his conduct in
carrying a handgun or club to protect his neighbor from
rape or robbery (Sec. 9.33), or to recover his neighbor's
property (Sec. 9.43), or to recover his own property from
a criminal who has fled beyond the victim's premises
(Sec. 9.42), be subject to conviction for unlawfully
carrying the weapon? Surely the legislature intended the
defense of necessity under Sec. 9.22 to be available in
such circumstances.


We hold the defense of necessity is not unavailable in a
prosecution under Sec. 46.02, supra, as a matter of law. 
To the extent of conflict Roy v. State, supra, is
overruled.



650 S.W.2d at 416.

 We construe Johnson as holding that the defense of
necessity is available only when the proffered evidence is relevant
to the charged offense. We note that all of the examples given by
the court that would justify an accused in using a weapon for
protective action relate to preventing conduct that has never been
approved by a court.

 In Schermbeck, the court upheld the trial court's refusal
to charge on the defense of necessity where the defendant prevented
entry to a nuclear plant. The court noted that the defendant was
aware that the plant was not operative at the time in question. The
court concluded that the fact the plant would later be in operation
did not constitute a reasonable belief that the defendant's action
was immediately necessary to avoid harm. 690 S.W.2d at 317. We
are unable to conclude that the court's holding constitutes
authority for the proposition that the defense of necessity could
have been raised had the plant been in operation at the time of the
charged offense.

 The court in Brumley succinctly addressed the
availability of the necessity defense in the context of facts like
the instant case as follows:



Subdivisions (1) and (2) of the statute contemplate a
balancing between the harm arising from the conduct
constituting the offense and the harm which the actor's
conduct sought to avoid. If the harm to be avoided was
clearly greater than the harm actually caused (the
offense actually committed), the actor's conduct causing
the offense is justified and he is exonerated. See
Searcy & Patterson, Practice Commentary, Tex. Penal Code
Ann. § 9.22 (Vernon 1974). However, the predicate
requirement for invoking this justification is that the
harm the actor assertedly seeks to prevent must first be
a legal harm. Reed v. State, 794 S.W.2d 806, 810 (Tex.
App. -- Houston [14th Dist.] 1990, pet. ref'd).


There is nothing in this record to show that the doctor,
his staff, or his patients acted otherwise than within
the constitutional right of women to terminate their
pregnancies recognized by the Supreme Court in Roe v.
Wade, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147
(1973). This Court must recognize that decision. Texas
intermediate courts are stare decisis courts. As such,
in an area where the law has been settled by a court of
superior jurisdiction such as the Supreme Courts of the
United States and this state, it is our bound duty to
recognize and acquiesce in the decisions determining that
law. Law making functions lie in the hands of our
Legislature, Congress, and within certain limitations not
applicable here, the Supreme Courts of our state and the
United States.



804 S.W.2d at 661 (emphasis added).

 We find nothing in the records before us to show that any
doctor, nurse, staff member, or patient acted otherwise than within
the constitutional right of women to terminate their pregnancies
recognized in Roe.

 To constitute reversible error resulting from exclusion
of evidence, an appellate court must conclude the proffered
evidence was relevant. Bird v. State, 692 S.W.2d 65, 73 (Tex. Cr.
App.), cert. denied, 475 U.S. 1031 (1985). Since determination of
the relevance of evidence is a matter within the discretion of the
trial court, an appellant must demonstrate that the trial court's
exclusion of the evidence amounted to an abuse of discretion. 
Werner v. State, 711 S.W.2d 639, 643 (Tex. Cr. App. 1986). No
error is shown when the evidence fails to demonstrate that the
accused is entitled to the defense to which the evidence applies. 
Reed, 794 S.W.2d at 810. Assuming that the proffered testimony was
admissible, the harm appellant asserts he sought to prevent was not
a legal harm. Brumley, 804 S.W.2d at 661.

 The fact that the record is devoid of proof that
Reproductive Services was licensed under the Texas Abortion
Facility Reporting and Licensing Act, Tex. Health & Safety Code
§§ 245.001-.016 (Pamph. 1991), does not affect the applicability of
the defenses. Assuming that the clinic was not licensed, there is
no showing that appellant was aware of this fact on the occasions
in question. Moreover, the controlling issue is whether appellant
obstructed entrances to the clinics. Reed, 794 S.W.2d at 811. 
Points of error one through seven, nine, and eleven through
thirteen are overruled.

 In point of error ten, appellant asserts that the trial
court erred in failing to grant appellant's request to instruct the
jury on the defense of mistake of fact in cause no. 3-90-140-CR. 
Tex. Pen. Code Ann. § 8.02(a) (1974) provides:



It is a defense to prosecution that the actor through
mistake formed a reasonable belief about a matter of fact
if his mistaken belief negated the kind of culpability
required for commission of the offense.



(Emphasis added.)

 Appellant contends that his testimony that he was
attempting to save a human life raises the defense of mistake of
fact and requires the court to submit his requested affirmative
defense. We find the court's treatment of this issue in Brumley to
be dispositive. In Brumley, the court stated:



In support of his argument, appellant relies on his
testimony that he reasonably believed harm was occurring
to mothers and their unborn fetuses. The phrase "kind of
culpability" as used in the statute refers to the
culpable mental state required in the offense with which
a defendant is charged. Beggs v. State, 597 S.W.2d 375,
378 (Tex. Crim. App. [Panel Op.] 1980).


It is undisputed that appellant remained upon the
premises after being requested to leave. No culpable
mental state is required under the criminal trespass
statute, Texas Penal Code Annotated § 30.05 (Vernon 1989
& Supp. 1991), other than a volitional refusal to leave
when requested. Reed v. State, 762 S.W.2d 640, 646 (Tex.
App. -- Texarkana 1988, pet. ref'd). Appellant's
mistaken belief that he was legally justified in his
obstructive tactic did not entitle him to a charge on
mistake of fact.



Brumley, 804 S.W.2d at 662. Appellant's tenth point of error is
overruled.

 In his eighth point of error, appellant asserts that the
court erred in granting the State's motion to quash subpoenas. 
Appellant sought records of Reproductive Services on the date of
the offense charged in cause no. 3-90-140-CR. Appellant contends
the records would reflect fetal or gestational age of fetuses
scheduled for abortion on the date in question that were necessary
to support his affirmative defenses. The court granted the motion
to quash, finding that the evidence sought in the subpoenas was not
relevant to any question in the case.

 We conclude that appellant has failed to show the
relevance of the information he sought to his affirmative defenses. 
Before a reviewing court may conclude that the trial court erred in
excluding evidence, the appellant must demonstrate that the court's
action constituted an abuse of discretion. Werner at 643.
Appellant's eighth point of error is overruled.

 In his fourteenth point of error, appellant contends that
the evidence was insufficient to show that he was on property owned
by Karen LaFayette as alleged in the information. In point of
error fifteen, appellant asserts there was no evidence to support
a finding that he received notice to leave the premises by the
owner or one acting with apparent authority of the owner. 
Appellant and the State have combined these points for discussion
and we address them accordingly.

 Texas Pen. Code Ann. § 30.05(a) (1989) defines the
offense of criminal trespass, in pertinent part, as follows:



(a) A person commits an offense if he enters or remains
on property or in a building of another without
effective consent and he:


 (1) had notice that the entry was forbidden; or


 (2) received notice to depart but failed to do so.


(b) For purposes of this section:


 (1) "entry" means the intrusion of the entire
body; and 


 (2) "notice" means:


 (A) oral or written communication by the
owner or someone with apparent authority
to act for the owner;

 (B) fencing or other enclosure obviously
designed to exclude intruders or to
contain livestock; or


 (C) a sign or signs posted on the property or
at the entrance to the building,
reasonably likely to come to the
attention of intruders, indicating that
entry is forbidden.



 Texas Pen. Code Ann. § 1.07(a)(24) & (25) (1974) defines
"Owner" and "Possession" as follows:



(a) In this code:


 (24) "Owner" means a person who has title to the
property, possession of the property, whether
lawful or not, or a greater right to
possession of the property than the actor.


 (28) "Possession" means actual care, custody,
control, or management.



 Karen LaFayette testified that she was the administrative
assistant at the Ladies Center located in the building complex
known as Medical Arts Square. LaFayette described the Medical Arts
Square as a complex with twenty buildings that make a square around
a parking lot. Access to the building is "by the front coming into
the parking lot." Additional routes of access are in the back of
the buildings for the physicians. A sign at the front of the
parking lot states "private property" and that parking is for
"employees and patients."

 LaFayette testified that she was the "everyday office
manager, just the general conducting of business"; that four people
had keys to the building and she was the person in control of the
keys. LaFayette related that on the day in question, Saturday,
December 10, 1988, the Ladies Center was the only building open for
business. She described the conditions that existed on that date,
as follows:



Like I said, there were people blocking the back door,
people blocking the front door, then there were people in
the parking lot, people around -- around both sides. All
around the tree in the back alleyway there were people
around, and on the other side of our building that does
not have the door, it is just windows, there were people
mingling around in that area also.



LaFayette gave warnings at the front and back doors of the clinic. 
She asked the people to leave and advised them if they did not
leave that they would be trespassing. When she gave the warning at
the front door, LaFayette placed appellant's location as "standing
not directly in front of me, but over the left some in front of the
group." She had seen appellant on two prior occasions.

 Austin Police Lieutenant Stewart testified that appellant
"was in front of the crowd of persons that was blocking the
doorway." Stewart, at LaFayette's request, advised the crowd that
they had been warned to leave and not come back, that they were in
violation of the criminal trespass statute, and, if they continued
to remain on the premises, that they would be subject to arrest.

 Stewart related that appellant attempted to make a deal
with him relative to certain people leaving. Stewart advised
appellant that he was not making any promises or deals, that
everybody there had been warned and was subject to arrest at that
time. Following this conversation, appellant began addressing the
crowd, Police Captain Riffe and LaFayette attempted to enter the
clinic, and people linked arms to prevent entry. At this point,
Stewart related that Captain Riffe "advised me to start arresting."

 Testimony of possession by persons alleged to be owners
is generally sufficient to prove ownership in trespass cases. 
Rogers v. State, 455 S.W.2d 773, 776 (Tex. Cr. App. 1970). In
Campbell v. State, 626 S.W.2d 91, 92 (Tex. App. 1981, no writ), the
court held that in proving the elements of criminal trespass the
testimony of the alleged owner or any other competent individual
may be sufficient to make out a prima facie showing of ownership.

 We conclude that LaFayette's testimony relative to her
position and duties at the Ladies Center established ownership as
that term is defined in Tex. Pen. Code Ann. § 1.07(a)(24). The
relative position of appellant to LaFayette and Officer Stewart
when the warnings were given, along with appellant's response to
Stewart, reflect that appellant received notice to leave the
premises by the owner or one acting with apparent authority of the
owner. See Tex. Pen. Code Ann. § 30.05.

 Viewing the evidence in the light most favorable to the
conviction, we conclude that a rational trier of fact could have
found the essential elements of the offense raised by points
fourteen and fifteen beyond a reasonable doubt. See Jackson v.
Virginia, 443 U.S. 307 (1979); Butler v. State, 769 S.W.2d 234, 239
(Tex. Cr. App. 1989). Appellant's fourteenth and fifteenth grounds
of error are overruled.

 The judgments are affirmed.



 

 Tom G. Davis, Justice

[Before Chief Justice Carroll, Justices Jones and Davis*]

Affirmed on All Causes

Filed: July 24, 1991

[Publish]












* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals,
sitting by assignment. See Tex. Gov't Code Ann. § 74.003 (1988).

1. [1]  This Court's cause numbers are used throughout the
opinion.
2. [2]  See Crabb v. State, 754 S.W.2d 742 (Tex. App. 1988, pet.
ref'd), cert. denied, 110 S. Ct. 65 (1989); Erlandson v. State,
763 S.W.2d 845 (Tex. App. 1988, pet. ref'd), cert. denied, 110 S.
Ct. 152 (1989); Bobo v. State, 757 S.W.2d 58 (Tex. App. 1988,
pet. ref'd), cert. denied, 109 S. Ct. 2066 (1989); Hoffart v.
State, 686 S.W.2d 259 (Tex. App. 1985, pet. ref'd), cert. denied,
479 U.S. 824 (1986).